RAYMOND J. FULLERTON, ESQ., SBN 219264
MAGDALENA R. MCQUILLA, ESQ., SBN 307578
GEARY, SHEA, O'DONNELL, GRATTAN & MITCHELL, P.C.
90 South E Street, Suite 300
Santa Rosa, California  95404
Telephone:  (707) 545-1660
Facsimile:   (707) 545-1876

Attorneys for Defendants
CITY OF ROHNERT PARK and DAVID RODRIGUEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON McCOMAS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF ROHNERT PARK and<br>DAVID RODRIGUEZ,<br><br>    Defendants. | CASE NO.:  16-cv-02705-TEH<br><br>**DEFENDANTS CITY OF ROHNERT PARK AND DAVID RODRIGUEZ'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  March 27, 2017<br>Time:  10:00 a.m.<br>Courtroom 12, 19th Floor |

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE THAT defendants CITY OF ROHNERT PARK, DAVID RODRIGUEZ ("defendants") shall, and hereby do, move this Court for summary judgment in their favor on March 27, 2017, at 10:00 a.m., before the Honorable Thelton Henderson, United States District Judge, at the United States District Court, Northern District of California, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California.  This motion is brought pursuant to Federal Rules of Civil Procedure, Rule 56, and on the basis that plaintiff cannot establish that defendants violated his constitutional rights, that Police Officer David Rodriguez is entitled to qualified immunity, and that the City of Rohnert Park is not liable under a *Monell* theory, as set forth below.

Said motion shall be based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declarations of David Rodriguez, Christine Giordano, and Raymond J.

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
mitchell
p.c.**

1    Fullerton, all filed and served herewith, the factual and legal matters presented to this Court by all

2    parties, on file herein, and any oral argument or further briefing this Court may deem necessary.

3

4    DATED: February 20, 2017          GEARY, SHEA, O'DONNELL, GRATTAN &
                                       MITCHELL, P.C.
5

6

7    By     /s/  *Raymond J. Fullerton*
                 RAYMOND J. FULLERTON
8               Attorneys for Defendants
                CITY OF ROHNERT PARK and
9               DAVID RODRIGUEZ

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
Mitchell
P.C.**

# TABLE OF CONTENTS

* * *

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................... 1

III.    CLAIMS FOR RELIEF AND PROCEDURAL STATUS ............................ 4

IV.     LEGAL STANDARD ............................................................................... 4

V.      LEGAL DISCUSSION ............................................................................. 5

        A.      Officer Rodriguez did not violate plaintiff's First Amendment rights
                by unholstering his service weapon in response to a potential threat ................. 5

                1.      Intent to inhibit plaintiff's speech was not a motivating
                        factor in defendant David Rodriguez's decision to
                        unholster his weapon ..................................................... 7

                2.      Officer Rodriguez would have taken the same action
                        even in the absence of the protected conduct ............................................. 10

        B.      David Rodriguez in his personal capacity is entitled
                to qualified immunity ................................................... 11

        C.      The City of Rohnert Park is not liable under a *Monell*
                theory, because no policy exists to retaliate against citizens
                for filming officer activities or for otherwise exercising
                their First Amendment rights ...................................... 13

VI.     CONCLUSION ...................................................................................... 15

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

# TABLE OF AUTHORITIES

\* \* \*

## <u>CASES</u>

*Anderson v. Liberty Lobby Inc.*
477 U.S. 242 (1986) ........................................................................... 5

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011) ..................................................................... 11, 12

*Bd. of the County Comm'Rs v. Brown*
520 U.S. 397 (1997) ......................................................................... 14

*Braxton-Secret v. A.H. Robins Co.*
769 F.2d 528 (9th Cir. 1985) ............................................................. 7

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ........................................................................... 5

*City and County of San Francisco v. Sheehan*
135 S.Ct. 1765 (2015) ...................................................................... 12

*City of Oklahoma City v. Tuttle*
471 U.S. 808 (1985) ..................................................................... 14, 15

*Conner v. Heiman*
672 F.3d 1126 (9th Cir. 2012) ......................................................... 11

*Desyllas v. Bernstine*
351 F.3d 934 (9th Cir. 2003) ....................................................... 5, 10

*Dietrich v. John Ascuaga's Nugget*
548 F.3d 892 (9th Cir. 2008) ......................................................... 7, 8

*Duran v. Douglas*
904 F.2d 1372 (9th Cir. 1990) ........................................................... 9

*Ford v. City of Yakima*
706 F.3d 1188, 1194 (9th Cir. 2013) ................................................. 8

//

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

*Fordyce v. City of Seattle*
    55 F.3d 436 (9th Cir. 1995) ................................................................. 8

*Keyser v. Sacramento City Unified Sch. Dist.*
    265 F.3d 741 (9th Cir. 2001) ............................................................... 6

*Los Angeles v. Heller*
    475 U.S. 796 (1986) ......................................................................... 13

*Lynn v. Sheet Metal Workers Int'l Ass'n*
    804 F.2d 1472 (9th Cir. 1986) ............................................................. 5

*Matsushita Electrical Industry Co., Ltd. v. Zenith Radio Corp.*
    475 U.S. 574 (1986) ........................................................................... 5

*Mendocino Envtl. Ctr. v. Mendocino Cty.*
    192 F.3d 1283 (9th Cir. 1999) .......................................................... 6, 7

*Monell v. Department of Social Services of City of New York*
    436 U.S. 658 (1978) ............................................................... 13, 14, 15

*Pearson v. Callahan*
    555 U.S. 223 (2009) ......................................................................... 11

*Pinard v. Clatskanie Sch. Dist. 6J*
    467 F.3d 755 (9th Cir. 2006) ............................................................ 6, 7

*Plumeau v. School Dist. #40 County of Yamhill*
    130 F.3d 432 (9th Cir. 1997) ............................................................. 14

*Saucier v. Katz*
    533 U.S. 194 (2001) ......................................................................... 11

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*
    70 F.3d 1095 (9th Cir. 1995) ............................................................. 11

*Skoog v. Cty. of Clackamas*
    469 F.3d 1221, 1227 (9th Cir. 2006) ............................................... 8, 12

*Terry v. Ohio*
    392 U.S. 1 (1968) ............................................................................ 13

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

*Trevino v. Gates*
    99 F.3d 911 (9th Cir. 1996) ............................................................................. 14

*T.W. Elec Serv., Inc. v. Pacific Elec. Contractors Ass'n*
    809 F.2d 626 (9th Cir. 1987) ..................................................................... 4, 5

*United States v. Orman*
    486 F.3d 1170 (9th Cir. 2007) ............................................................... 10, 13

*Villiarimo v. Aloha Island Air, Inc.*
    281 F.3d 1054 (9th Cir. 2002) ....................................................................... 5

*White v. Pauly*
    196 L.Ed.2d 463 (2017) .............................................................................. 12

*Wilson v. Layne*
    526 U.S. 603 (1999) ................................................................................... 11

## <u>STATUTES</u>

Federal Rules of Civil Procedure
    Rule 56(a) ..................................................................................................... 4

LAW OFFICES OF
**GEARY,**
**SHEA,**
**O'DONNELL**
**GRATTAN &**
**MITCHELL**
**P.C.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

## I.

## INTRODUCTION

While Federal law prohibits state actors from retaliating against individuals for exercising rights guaranteed under the First Amendment, the mere fact that an individual is engaging in such activity does not immunize the individual from police action. In this case, Officer David Rodriguez approached Plaintiff Don McComas to investigate suspicious activity. As the officer approached, McComas placed his hand in a pocket that visibly contained one or more objects. When the officer asked him to remove his hand, McComas refused in a loud, aggravated voice. In response to the refusal of his safety command, Rodriguez removed his service weapon from its holster. But because the officer's action was related to reasonable safety concerns, it does not constitute a violation of McComas's First Amendment rights even though McComas was filming the interaction. Thus, summary judgment is proper.

## II.

## STATEMENT OF FACTS

The material facts in this case are not disputed, as the majority of the encounter between Plaintiff Don McComas and Defendant David Rodriguez was captured on video, and the events leading up to the encounter were substantially captured on dispatch recordings and in photographs.

### *Events Immediately Preceding the Filmed Encounter*

On July 29, 2015 Officer Rodriguez was on patrol in the City of Rohnert Park. (Rodriguez Decl. ¶3) He had previously received complaints from a resident of Heritage Way about an alleged car-sales business illegally operated out of the neighborhood. (Rodriguez Decl. ¶4) As he drove on a nearby street, he observed vehicles for sale. (Rodriguez Decl. ¶4) Officer Rodriguez decided to investigate whether any vehicles in the neighborhood were registered to car dealers or persons out of the area who had filed a release of liability with the DMV. (Rodriguez Decl. ¶¶ 4, 6)

After he turned down Hermitage Way, a double cul-de-sac, Officer Rodriguez saw an older-model Toyota truck and decided to run its plates because it was a used vehicle that could potentially be for sale. (Rodriguez Decl. ¶7, Ex. A; Fullerton Decl. Ex. B) As the officer looped around the cul-de-sac he saw that the Toyota truck had a tow hitch on the back license plate, so he drove back

down towards the cross street, Heartwood, to turn around and read the license plate from the front of the truck.  (Rodriguez Decl. ¶7; Fullerton Decl. Ex.B)  As he drove back down the street towards Heartwood and began to turn around, he looked in his rearview mirror and saw a person duck behind a truck parked in a driveway.  (Rodriguez Decl. ¶8)  As it was in the middle of the day on a Wednesday in a residential neighborhood, Officer Rodriguez thought that seemed suspicious.  (Rodriguez Decl. ¶8)  He thought the person was hiding from him.  (Rodriguez Decl. ¶8)

Plaintiff acknowledges that he moved behind his truck as the officer's vehicle turned around, just after he took two pictures of Officer Rodriguez's vehicle near the Toyota truck.  (McComas Depo. 56:1—3, 56:20—25, 57:16—21, 57:25—58:12; 63:22—64:7; Fullerton Decl. Ex.B)  He went behind his truck because it blocked his view of the officer's vehicle as it turned around on the other end of the culdesac and he wanted to see what was happening.  (McComas Depo. 63:22—25)  At the time of the encounter, McComas believed that the officer was on his street for reasons related to his son's multiple arrests by the Rohnert Park police department.  (McComas Depo. 14:5—15:17; Fullerton Decl. Ex. A [referred to herein as "Video"], 3:19)  He believed that, since his son had gone into hiding in Texas, Rohnert Park police officers, including Officer Rodriguez, had been driving past his house.  (McComas Depo. 14:8—20, 50:8—52:13)  Accordingly, he took the two photographs of Officer Rodriguez's vehicle as it drove near the Toyota truck as proof of what the department had "been doing to" him.  (McComas Depo. 55:10—14, 57:1—15; Fullerton Decl. Ex.B)  He then went behind his truck and out to the other side, and held his camera up like he was filming even though he did not actually begin to film until the officer began to drive back down the cul-de-sac.  (McComas Depo. 56:1—5, 58:5—23)

After Officer Rodriguez turned his vehicle around, he paused in the middle of Hermitage and called in the Toyota truck's license plate to dispatch.  (Rodriguez Decl. ¶9; Giordano Decl. Ex.A, 0:22; McComas Depo. 58:18—23)  As he idled there he faced the end of the cul-de-sac where he had seen the person duck behind the truck parked in the driveway.  (Rodriguez Decl. ¶9)  He could not see the person, but he did see an arm sticking out from behind the truck, holding an object.  (Rodriguez Decl. ¶9)  After calling in the Toyota's license plate, he began to drive closer to see what was going on.  The person emerged, still holding the object.  (Rodriguez Decl. ¶10)

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

***The Filmed Encounter***

McComas began filming when the officer began to drive back down the cul-de-sac, towards his house. (McComas Depo. 64:20—65:6, 74:1—3) When Officer Rodriguez pulled in front of McComas's home, he observed the person standing next to the truck in the driveway, holding the object up. (Rodriguez Decl. ¶¶ 10, 11) The officer suspected the object was a cell phone, but he could not be sure. (Rodriguez Decl. ¶11) Officer Rodriguez ran the truck's plates. (Rodriguez Decl. ¶11; Giordano Decl. Ex. A, 2:49) Officer Rodriguez prepared to exit his vehicle to talk to the person. (Rodriguez Decl. ¶11)

The officer was not equipped with a body camera and his police cruiser had no dashboard camera. (Rodriguez Decl. ¶12) Therefore, before he exited his cruiser, he took a picture of the man to aid in later identification in case the subject ran away and he was unable to apprehend him. (Rodriguez Decl. ¶12, Ex. B) Officer Rodriguez saw that the man had both hands exposed and the left front pocket of his pants contained a bulge, as shown in the photograph he took. (Rodriguez Decl. ¶13, Ex. B)

As soon as Officer Rodriguez exited his vehicle and began to approach, McComas placed his left hand into his front left pocket – the same pocket that visibly contained some item or items. (Rodriguez Decl. ¶14; McComas Depo. 76:19—21; 78:21—79:12) As shown on the video taken by plaintiff, the first thing Officer Rodriguez said was, "Go ahead and take your hand out of your pocket." (Video, 2:14; Rodriguez Decl. ¶14; McComas Depo. 79:13—18) McComas responded, "No, sir, I've done nothing. I've done absolutely nothing. No." (Video, 2:16; Rodriguez Decl. ¶15; McComas Depo. 79:19—21) The officer could see McComas's hand moving in his pocket, like he was grasping at something. (Rodriguez Decl. ¶15)

At that point Officer Rodriguez unholstered his service weapon and said, "Seriously." (Video, 2:18; Rodriguez Decl. ¶15; McComas Depo. 80:9—17) McComas responded, "Put your gun down, really?" (Video, 2:19) The officer called for backup as McComas placed a set of keys and a second cell phone on the hood of the truck. (Video, 2:21-22; Rodriguez Decl. ¶16; McComas Depo. 81:14—19; Giordano Decl. Ex. A, 3:50) McComas then proceeded to retreat around to the back of his truck, while pointing at the officer and saying, "No, you don't touch me, I've done

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
mitchell
p.c.**

- 3 -
Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

nothing, nope, you go away." (Video, 2:25; Rodriguez Decl. ¶16; McComas Depo. 81:14—82:7)

Officer Rodriguez followed to keep Plaintiff in his line of sight and maintain his safety, in

accordance with his training and experience. (Rodriguez Decl. ¶17)

The entire encounter was recorded on video by Plaintiff. (Video; McComas Depo. 79:22—

80:5; 81:11—13) The officer and Plaintiff exchanged words for approximately two minutes.

(Video, 2:25—4:25) Officer Rodriguez's weapon remained unholstered until the end of the

encounter. (Video, 4:30) Two minutes and twenty-five seconds after he exited his vehicle, Officer

Rodriguez got back in. (Video, 4:35)

Once back in his vehicle, Officer Rodriguez called in to dispatch and asked the backup

officers to meet him at a nearby church parking lot. (Rodriguez Decl. ¶21; Giordano Decl. Ex. A,

6:46) He then asked dispatch to create a case number and attach it to the truck in Plaintiff's

driveway. (Giordano Decl. Ex. A, 7:49, 8:44—9:07) When dispatch asked for the nature of the

case, he said officer safety. (Giordano Decl. Ex. A, 8:08—8:15)

### III.

### CLAIMS FOR RELIEF AND PROCEDURAL STATUS

McComas alleges two causes of action related to the filmed incident with Officer Rodriguez

on July 29, 2015. Count One alleges a violation of 42 U.S.C. §1983 against Officer David

Rodriguez for violation of Plaintiff's First Amendment rights. Count Two alleges a violation of 42

U.S.C. §1983 against the City of Rohnert Park under a *Monell* theory, for violation of Plaintiff's

First Amendment rights.

### IV.

### LEGAL STANDARD

Summary judgment is properly granted when the evidence, as viewed most favorably to the

non-moving party, shows that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law. See Fed. R. Civ. Rule 56(a). A fact is material if it is

relevant to an element of a claim or a defense, the existence of which may affect the outcome of the

suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Id*. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industry Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence… will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).

Disputes as to immaterial issues of fact do not preclude summary judgment. *Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1478 (9th Cir. 1986). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The non-moving party must instead set forth "significant probative evidence tending to support the complaint" and may not rely on the mere allegations in the pleadings in order to preclude summary judgment. *T.W. Elec.*, 809 F.2d at 630-31. The more implausible the claim or defense asserted by the non-moving party, the more persuasive its evidence must be to avoid summary judgment. *Matsushita*, 475 U.S. at 587. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## V.

## LEGAL DISCUSSION

**A. Officer Rodriguez did not violate plaintiff's First Amendment rights by unholstering his service weapon in response to a potential threat.**

Plaintiff McComas does not contend that Officer Rodriguez's decision to initiate contact with him violated his constitutional rights. Nor is such conduct actionable. *Desyllas v. Bernstine*, 351 F.3d 934, 940 (9th Cir. 2003) (Mere police questioning does not constitute a seizure,

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
p.c.**

and consensual encounters with police do not constitute investigatory stops). Instead, McComas alleges that Officer Rodriguez violated his First Amendment rights "by repeatedly threatening Plaintiff with a firearm in retaliation for Plaintiff's exercise of his free speech and . . . his right to record police activity." (Compl. ¶29) But the undisputed facts — established by video — demonstrate that the officer's decision to unholster his weapon was the result of McComas's forceful refusal to comply with a valid safety command — not because McComas was filming the officer.

For his First Amendment retaliation claim, McComas must establish three elements: (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill or silence a person of ordinary firmness from continuing to engage in the protected activity and (3) intent to inhibit the protected speech was a substantial or motivating factor in the defendant's conduct. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999); *see Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Once a plaintiff has made such a showing, the burden shifts to the government to show that it would have taken the same action even in the absence of the protected conduct. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750 (9th Cir. 2001).

Defendants do not dispute that McComas had a right to take video of the officer. Indeed, the officer in this case did not ever instruct him to stop recording or to put down his phone. However, defendants submit that McComas cannot meet his burden of proof with respect to the third element, that an intent to inhibit his protected conduct was a substantial or motivating factor in defendant Rodriguez's decision to unholster his weapon. As the video establishes, the officer only unholstered his weapon after McComas initially refused to remove his hand from his pocket that clearly contained one or more objects. Under these circumstances, McComas cannot establish that the alleged wrongful conduct was motivated by protected activity. Further, given McComas's forceful refusal of a valid safety command, any reasonable officer would have taken the same action regardless of whether McComas was engaged in any protected activity.

//

//

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
mitchell
P.C.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

**1.** ***Intent to inhibit plaintiff's speech was not a motivating factor in defendant David Rodriguez's decision to unholster his weapon***

In determining whether an intent to inhibit Plaintiff's protected speech was a substantial or motivating factor in the defendant's conduct, the court must decide whether the record would permit a jury to infer that Officer Rodriguez unholstered his weapon in retaliation for Plaintiff's filming activity, and "not simply" because Plaintiff put his hand into his pocket upon the officer's approach and then refused the officer's safety command. *Pinard*, *supra*, 467 F.3d at 771. Although questions involving a person's state of mind are generally factual issues, "where the palpable facts are substantially undisputed, such issues can become questions of law which may be properly decided by summary judgment." *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985). Intent to inhibit speech can be demonstrated either through direct or circumstantial evidence. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999).

In *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 894 (9th Cir. 2008), the court considered a case where a woman was cited for a traffic violation the day after a news article came out about another officer's threat to arrest her as she attempted to register voters and gather petition signatures at a public event. She alleged she was cited in retaliation for her First Amendment activity, but her retaliation claim was dismissed on summary judgment because she presented no evidence that defendants had read the article, and thus she could not support her theory that they cited her in retaliation for the article and not due to her traffic violation. *Id*. at 901.

In this case, it is not reasonable to infer that Officer Rodriguez unholstered his weapon because McComas was filming. The officer did not unholster his weapon upon exiting his vehicle, even though he suspected by then that McComas was filming him or taking a picture. (Video 2:10; Rodriguez Decl. ¶11) Once out of his vehicle, Officer Rodriguez instructed McComas to take his hand out of his pocket, but still did not unholster his weapon. (Video, 2:14) McComas did not comply, and instead angrily refused. (Video, 2:16) Only then did Officer Rodriguez unholster his weapon. (Video, 2:18) This undisputed evidence demonstrates that Officer Rodriguez unholstered his weapon only because of the refusal to follow a safety command and not in retaliation for First Amendment activity.

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
Mitchell
P.C.**

In response to Officer Rodriguez unholstering his weapon, Plaintiff finally took his hand out of his pocket, as the officer called for backup. (Video, 2:21) The video establishes that McComas, in fact, did have objects in his pocket as he removed a set of keys and a second cell phone. But while the officer was able to determine that the objects were not weapons, McComas's behavior continued to pose a potential threat. McComas began to move towards the back of his truck, while shouting and pointing at the officer. (Video, 2:25) The officer, still concerned for his safety, was forced to follow Plaintiff, to keep him in his sight line. (Rodriguez Decl. ¶17) In accordance with his safety training and experience, the officer kept his service weapon unholstered, to protect himself as McComas moved behind the truck. (Rodriguez Decl. ¶17) The mere fact that Plaintiff happened to be filming during this series of events does not allow an inference that the officer was motivated by the filming versus by the more obvious reason, that Plaintiff's behavior was erratic and represented a potential threat to the officer's safety.

In certain circumstances, courts have determined that evidence of a potential retaliatory motive is sufficient to establish a triable issue of fact. However, in those cases, the courts relied on specific statements that suggest that the action complained of could be in retaliation for the exercise of speech. For example, in *Ford v. City of Yakima*, 706 F.3d 1188, 1194, 1191 (9th Cir. 2013), the court denied summary judgment where an officer exercised his discretion to arrest a plaintiff after stating multiple times to the plaintiff and fellow officers that he would arrest plaintiff if he didn't "shut up" and "stop running [his] mouth." In *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1227, 1235 (9th Cir. 2006), the court found that summary judgment was improper in a search and seizure case where the officer was aware of a pending lawsuit against his department and stated during the search of the plaintiff that "people shouldn't sue cops" or "it wasn't right to sue an officer."

In contrast here, there is no similarly "strong evidence of a retaliatory motive." *See Dietrich*, *supra*, 548 F.3d at 901 (9th Cir. 2008). Rather the conduct complained of — unholstering of a weapon — was only in response to McComas's refusal to obey a safety command. There is no evidence, for example, that Officer Rodriguez told Plaintiff to stop filming or attempted to block or seize Plaintiff's camera. *See Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) ("his camera was deliberately and violently smashed into his face by [the officer]"). Nor did Officer

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

Rodriguez ever make statements to indicate that Plaintiff's speech was the reason he unholstered his service weapon. *See Duran v. Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) ("[the officer] admits that he stopped [the plaintiff] because he made an obscene gesture and yelled profanities toward him.") Not once during the verbal exchange between Plaintiff and the officer did Officer Rodriguez instruct Plaintiff to stop filming. In fact, he encouraged Plaintiff — twice — to follow through with his promise to put the video on YouTube. (Video, 3:17, 4:19) The officer repeatedly told Plaintiff that he was required to take his hand out of his pocket when he told him to, and that he shouldn't have put his hand into his pocket in the first place. (Video 2:33, 2:45, 2:52, 3:03) Plaintiff responded by yelling that he had done nothing and that his hand could be in his pocket, and demanding that the officer tell him what he had done. (Video, 2:35, 2:47, 2:51) The officer even told Plaintiff directly that his gun was unholstered due to his concern that Plaintiff had a weapon. (Video, 3:06—11) This undisputed evidence all points to safety as the officer's concern, and not Plaintiff's First Amendment activity.

Plaintiff's complaint highlights just one of the officer's statements, "You are taking a picture of me, I am taking a picture of you," made in response to Plaintiff's question of why the officer had gotten out of his vehicle. (Compl. ¶¶ 25—26; Video, 2:24—58) At most, this statement could be taken as circumstantial evidence that Plaintiff's filming activity motivated the officer to approach Plaintiff in the first place, but it is unrelated to the alleged deprivation: that the officer unholstered his weapon to chill Plaintiff's First Amendment activity. The evidence does not support Plaintiff's theory that the officer threatened Plaintiff with his service weapon or advanced towards Plaintiff with his weapon unholstered in order to dissuade Plaintiff from his First Amendment activity. (Compl. ¶¶ 21—24, 29) The evidence instead overwhelmingly demonstrates that the officer, in unholstering his weapon and maneuvering around Plaintiff's truck in order to keep Plaintiff in sight, was simply maintaining his own safety in accordance with his training and experience, not because Plaintiff was filming him. Accordingly, there is no constitutional deprivation and summary judgment is proper.

//

//

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
mitchell
P.C.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

## 2. *Officer Rodriguez would have taken the same action even in the absence of the protected conduct*

Even if Plaintiff could meet his burden with respect to the third element, Officer Rodriguez would have taken the same action even in the absence of the protected activity. If McComas had not been filming, Officer Rodriguez would have made the same safety instructions and protected himself in accordance with his training and experience. (Rodriguez Decl. ¶¶ 14—17) The officer approached because he saw what he perceived to be suspicious activity. (Rodriguez Decl. ¶8) But even in the absence of suspicious conduct, it would have been lawful for him to approach and ask questions. *Desyllas v. Bernstine*, *supra*, 351 F.3d 934, 940. More importantly, whether a consensual encounter or an investigatory stop, an officer may lawfully conduct a protective weapons patdown upon reasonable suspicion that a person is armed. *United States v. Orman*, 486 F.3d 1170, 1174 (9th Cir. 2007). Given the circumstance of a subject who suddenly placed his hand into a pocket that obviously contained some large item or items, it was reasonable for Officer Rodriguez to tell McComas to remove his hand from his pocket, and to draw his service weapon upon his dramatic refusal.

Officer Rodriguez was faced with an agitated, defiant subject who made aggressive movements. McComas put his hand into his pocket as soon as the officer exited his vehicle, and he loudly refused to remove his hand when told to. (Video 2:16; McComas Depo. 78:21—79:12; 79:19—21; Rodriguez Decl. ¶¶ 14, 15) The officer could see McComas grasping at something in his pocket, and unholstered his weapon out of concern for his own safety. (Rodriguez Decl. ¶15) McComas then removed his hand, but before any more words could be exchanged he began to travel towards the back of his truck while yelling at the officer. (Video, 2:25) Officer Rodriguez was trained to be ready for the unexpected and to keep the subject within his line of sight. (Rodriguez Decl. ¶17)

The undisputed evidence shows a hostile subject who gave Officer Rodriguez good reason for concern. Rodriguez had never met McComas and had no knowledge of his family's prior interaction with the department which might have given some context for the hostility. (Rodriguez Decl. ¶22) The actions that form the basis of the complaint were not taken by the officer in

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

1  response to First Amendment activity but were clearly safety measures taken in direct response to

2  evasive and hostile movements.  Officer Rodriguez would have responded in the same way to any

3  subject acting that way, whether filming or not.

4  **B.      David Rodriguez in his personal capacity is entitled to qualified immunity**

5          Even if the court finds that questions of material fact remain, summary judgment should be

6  granted to Officer Rodriguez in his personal capacity, based on his entitlement to qualified

7  immunity.  Qualified immunity shields a public official from personal liability when the official

8  reasonably believes that his or her conduct complies with the law.  *Pearson v. Callahan*, 555 U.S.

9  223, 244 (2009).  Qualified immunity applies unless a plaintiff can show that (1) the official

10 violated a statutory or constitutional right, and (2) the right was clearly established at the time of the

11 challenged conduct.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

12         Qualified immunity should be decided at the earliest stage possible in the litigation.  *Sinaloa*

13 *Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).  A district court

14 should decide the issue of qualified immunity as a matter of law when the material, historical facts

15 are not in dispute, and the only disputes involve what inferences properly may be drawn from those

16 historical facts.  *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (quotation marks omitted).

17 A district court should only submit the issue to a jury when historical facts material to the qualified

18 immunity determination are in dispute.  *Id.*

19         If there is no violation of a constitutional right, there is no need to continue with a qualified

20 immunity analysis.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A court has discretion, however, to

21 decide which prong should be addressed first under the circumstances of a particular case.

22 *Pearson*, *supra*, 555 U.S. at 236.  A court may decide that a right was not clearly established and

23 grant qualified immunity without deciding the underlying constitutional question.  *Id.* at 237.

24         A right is clearly established if a reasonable officer would know that his conduct was

25 unlawful in the situation he confronted.  *Saucier*, *supra*, 533 U.S. at 202.  A case directly on-point

26 is not required, "but existing precedent must have placed the statutory or constitutional question

27 beyond debate."  *Ashcroft*, *supra*, 563 U.S. at 741.  To determine if the right was clearly

28 established, it must be defined at the appropriate level of specificity.  *Wilson v. Layne*, 526 U.S.

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

603, 615 (1999).

The Supreme Court has repeatedly cautioned against evaluating the "clearly established" element with a high level of generality. *Ashcroft*, *supra*, 563 U.S. at 742. "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City and County of San Francisco v. Sheehan,* 135 S.Ct. 1765, 1774 (2015). The Supreme Court has again, just this year, reaffirmed that "the clearly established law must be particularized to the facts of the case." *White v. Pauly*, 196 L.Ed.2d 463, 468 (2017). In *White*, the lower court's denial of qualified immunity was overturned because the court failed to identify a case where an officer acting under similar circumstances had been held to have violated the Constitution. *Ibid*.

As argued in previous sections, the Defendants' position in this case is that no constitutional violation has occurred. Should the court agree, there is no reason to undertake the qualified immunity analysis. If, on the other hand, the claims are allowed to proceed, or if the court declines to decide the underlying constitutional question, qualified immunity should be granted to Officer David Rodriguez on the grounds that there is no clearly-established right for a person to refuse an officer's safety command solely because that person happens to be engaged in a First Amendment activity.

There is no legal authority that clearly establishes such a right. It is by now established in the Ninth Circuit that it is a violation of the First Amendment to take retaliatory action even if probable cause also exists for the action. *Skoog*, *supra*, 469 F.3d at 1235. But this is not a case where probable cause was formulated and acted upon in conjunction with a retaliatory intent. Instead, we have a situation where an officer approached a subject for questioning and was suddenly faced with dramatically changed circumstances when that subject began to take actions that made the officer reasonably fear for his safety. The specific right implicated here is not "the right of an individual to be free of police action motivated by retaliatory animus but for which there was probable cause." *Ibid*. The question here is whether a clearly-established right exists for an individual to refuse an officer's safety commands when the officer has reasonable suspicion that the person is armed but the person is also engaged in a First Amendment activity.

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
mitchell
p.c.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

Ninth Circuit authority allows an officer to engage in a protective weapons patdown when the officer has reasonable suspicion that the subject may have a weapon, whether the interaction is a Terry stop or a consensual encounter. *Orman*, *supra*, 486 F.3d at 1174. Supreme Court authority recognizes the interest an officer has in "taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Terry v. Ohio*, 392 U.S. 1, 23 (1968). It is not clearly established that this interest is suspended whenever a subject is engaged in a First Amendment activity. There is no case that even suggests as much. Defendant Officer David Rodriguez is entitled to qualified immunity and the motion for summary judgment should thus be granted.

**C.** **The City of Rohnert Park is not liable under a *Monell* theory, because no policy exists to retaliate against citizens for filming officer activities or for otherwise exercising their First Amendment rights**

Plaintiff alleges that the City of Rohnert Park is liable for any alleged constitutional violation because the acts complained of were carried out under the policies and practices of the City of Rohnert Park, specifically (but "not limited to") threatening to use force against citizens in retaliation for the content of their speech and for exercising their right to record police activity. (Compl. ¶¶ 33—40) The law is well established that a municipality cannot be held liable in a § 1983 action under a respondeat superior theory of liability. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691 (1978). Instead, to establish liability against a municipality, a plaintiff must establish that the constitutional deprivation was committed pursuant to official municipal policy or custom. *Id.* at 690-91. Of course, where a plaintiff is unable to establish a constitutional deprivation, the municipality is not liable. *See Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("[N]either *Monell* … nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.")

To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitution right; and (4) that the policy is the moving force behind the constitutional

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

violation. *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432,438 (9th Cir. 1997). A plaintiff seeking to impose liability under a *Monell* theory must identify the municipal policy or custom that caused the plaintiff's injury. *Bd. of the County Comm'Rs v. Brown*, 520 U.S. 397, 403 (1997). It is "not enough for a § 1983 plaintiff merely to identify conduct attributable to the municipality." *Id.* at 404. Rather the plaintiff must establish the requisite culpability of deliberate indifference and that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Ibid.* (emphasis in original).

Even without a formally-approved policy, a persistent and widespread custom could be so permanent and well settled that it constitutes a policy. *Monell*, *supra*, 436 U.S. at 691. A § 1983 plaintiff, however, cannot recover under a *Monell* custom or practice theory by simply producing evidence of isolated incidents or alleged misconduct directed towards him. The plaintiff must produce "considerably more proof than the single incident . . . to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918, (9th Cir. 1996).

Here, as outlined above, Plaintiff cannot establish the existence of a constitutional deprivation, as a matter of law. Even if he could, there is absolutely no evidence that the City of Rohnert Park Department of Public Safety's policies contributed to the alleged constitutional violation. *See*, Exhibit B to the Declaration of Christine Giordano. Nor is Plaintiff able to produce proof of any alleged City of Rohnert Park custom or practice of using force to retaliate against individuals for the exercise of their First Amendment rights. In response to deposition questions regarding other such incidents, Plaintiff identified only one, which occurred after Plaintiff's incident. (McComas Depo. 100:7—101:21) According to Plaintiff, a coworker who posted something on Facebook about Plaintiff's incident had an interaction with police two weeks later in which he was handcuffed, had his home searched, and was released, but Plaintiff was unable to provide any other details. *Ibid.* No further details have been provided in discovery. Only

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

speculation connects that occurrence to the individual's Facebook posting.

Even if this vague description of an additional incident could somehow be shown to be an example of Rohnert Park police retaliation against an individual for his speech, it falls fall short of the proof needed to demonstrate a custom or practice under *Monell*. Under *Monell*, governmental practices must be "persistent and widespread" to be considered a custom. *Monell*, *supra*, 436 U.S. at 691. Evidence of one additional incident, which occurred after the alleged violation at issue in this lawsuit, is not the "considerable" amount of further proof needed to demonstrate the requisite fault of the municipality or to show any connection between the incident and the alleged policy. *City of Oklahoma City*, *supra*, 471 U.S. at 824.

The conclusory allegations in Plaintiff's complaint represent nothing more than a formulaic recitation of the elements of a *Monell* cause of action. Plaintiff's complete failure to present any evidence of a policy or custom of constitutional deprivation, or to even identify such a policy, means no genuine dispute of material fact exists to defeat summary judgment. The City of Rohnert Park is therefore entitled to summary judgment on Plaintiff's *Monell* claim.

## VI.

## CONCLUSION

McComas cannot establish the alleged constitutional violation, because the undisputed facts demonstrate that the officer only unholstered his weapon in response to Plaintiff's threatening movements and aggressive refusal to obey the officer's reasonable safety command. At a minimum, Officer Rodriguez is entitled to qualified immunity because there is no clearly-established right for a person to refuse an officer's safety commands simply because that person is also engaged in a First Amendment activity. Without a Constitutional deprivation, and in the absence of any an actionable policy or practice, the *Monell* claim must also fail. Accordingly, Summary Judgment should be granted on all claims.

///

///

///

///

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
Mitchell
P.C.**

Defendants David Rodriguez and City of Rohnert Park's Motion for Summary Judgment

DATED:  February 20, 2017        GEARY, SHEA, O'DONNELL, GRATTAN & MITCHELL, P.C.


By      */s/ Raymond J. Fullerton*
              RAYMOND J. FULLERTON
              Attorneys for Defendants
              CITY OF ROHNERT PARK and
              DAVID RODRIGUEZ

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
mitchell
P.C.**