United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| DON MCCOMAS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ROHNERT PARK, et al.,<br><br>    Defendants. | Case No. 16-cv-02705-TEH<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's motion for summary judgment. The Court found the matter suitable for resolution without oral argument and vacated the hearing scheduled for April 3, 2017. *See* Civ. L.R. 7-1(b). Having carefully considered the parties' written arguments, the Court DENIES Defendant Rodriguez' motion for summary judgment for the reasons set forth below.

**BACKGROUND**

This action, brought under 42 U.S.C. § 1983, arises out of an encounter between Don McComas ("Plaintiff" or "McComas") and Officer David Rodriguez ("Defendant" or "Rodriguez"), a City of Rohnert Park police officer. The facts, gleaned from the evidence submitted by both parties, are as follows.

Shortly after noon on July 29, 2015, Plaintiff McComas was standing in his driveway hitching a boat to his Ford Excursion truck. McComas Decl. ¶ 5 (ECF No. 43-1). He was waiting for his son to arrive so that they could go to a meeting with his son's attorney and then spend the afternoon at a nearby lake with friends. *Id*. As McComas was hooking up his boat to his truck, he got a glimpse of a police car turning left from Heartwood Drive onto Hermitage Way. *Id*. McComas' house is located on one end of Hermitage Way, which is a cul-de-sac. *Id*. ¶ 2. McComas thought it was odd that a police car was turning on his little street and heading toward his house just minutes before his son

Tyler was supposed to arrive. McComas Dep. at 55:10-15 (ECF No. 34-3). McComas felt that ever since Tyler had been falsely accused of domestic violence by his ex-girlfriend about thirteen months prior, Rohnert Park police had started circling around his street and keeping an eye on his house. McComas Decl. ¶ 4.

Upon seeing the police car, McComas moved from the back of his truck to the front passenger side, where he stood watching the police car. McComas Dep. at 56:9-17. The police car, driven by Officer Rodriguez, drove to the front of McComas' house, paused there for a few seconds, and then drove away. *Id*. at 55:4-19. While standing in his driveway, McComas was able to see the officer in the car. *Id*. at 55:7-9. He recognized the officer as someone who had driven around his street about eight times in the last thirteen months. *Id*. at 52:2-6. McComas did not know the name of the officer and had not had any conversations with the officer prior the encounter on July 29th. *Id*. at 52:18-20. As Rodriguez drove away from McComas' house toward the north end of the cul-de-sac, McComas pulled out his phone and took two photos of the back of the police car. *Id*. at 55:10-14; Ex. B to Fullerton Decl. (ECF No.34).

Officer Rodriguez contends that he was in McComas' neighborhood to investigate an illegal care sales business. Rodriguez Decl. ¶ 4 (ECF No. 35). He was running registration checks on parked vehicles when he drove past McComas' house and past a Toyota truck that he thought might have been a used car for sale. *Id*. ¶ 7. He claimed that as he was driving north, he saw in his rearview mirror a person, presumably McComas, duck behind a truck. *Id*. ¶ 8. He drove to the north end of the cul-de-sac, turned around and headed in McComas' direction. *Id*. ¶ 9. He stopped a few houses away from McComas' house and spent about two minutes running a check on the Toyota's license plate. *Id*.; McComas Dep. at 58:18-23. Then he drove toward McComas' house, observed McComas holding an object in his hand that he suspected was a phone, and called dispatch to check the registration of McComas' Ford Excursion truck. Rodriguez Decl. ¶¶ 10-11.

McComas was standing on the driver's side of his truck, in the middle of his driveway, holding his cell phone and filming the officer. McComas Dep. at 64:2-65:2. He

had started filming as soon as Rodriguez had begun driving in his direction after stopping a few houses away. McComas Decl. ¶ 8. The rest of the encounter was caught on video taken by McComas' cell phone. Def.'s Ex. A to Fullerton Decl. ("Video") (ECF No. 40). After checking the registration on McComas' truck, Officer Rodriguez rolled down his window and took a photo of McComas with his own cell phone, allegedly for identification purposes. Video at 1:20-1:55; Rodriguez Decl. ¶ 12. The photo shows McComas holding his camera in his right hand, his left hand reaching toward his phone, and a large bulge present in McComas' left pants pocket. Def.'s Ex. B to Rodriguez Decl. (ECF No. 35-2). Rodriguez then exits his vehicle, puts his hand on top of his holstered weapon, and orders McComas: "Go ahead and take your hand out of your pocket!" Video at 2:07-2:15. McComas responds: "No, sir! I have done absolutely nothing." *Id.* at 2:15-2:17. Within a second, Officer Rodriguez unholsters his gun and holds it by his side. *Id.* at 2:18. McComas exclaims, "Put your gun down, really?!" and immediately takes out the keys and second cell phone that were in his pocket, placing them on the hood of his truck. *Id.* at 2:19; 2:20-2:24.

The video shows McComas backing up behind his truck, while continuing to film with his right hand and pointing at the officer with this left hand. *Id.* at 2:25-2:35. McComas can be heard pleading, "You don't touch me!" in a threatened anxious manner. *Id.* at 2:25-2:27. Rodriguez can be seen holding his weapon with two hands for a few seconds and then pointing it back down toward the ground. *Id.* at 2:24-2:27. The officer follows McComas as McComas walks backward to the other side of his truck. *Id.* at 2:25-2:42. McComas can be heard saying, "You go away!" to which the officer responds: "I don't go away. I stay where I am! You could go into your house if you want or you could stay out here, but you don't keep your hand in your pocket!" *Id.* at 2:39-2:47. McComas responds: "My hand can be in my pocket if I want. There is nothing there. I've done nothing! What have I done? Answer me… Why did you get out of your vehicle?" *Id.* at 2:48-2:57. Officer Rodriguez answers: "You are taking a picture of me. I am taking a picture of you." *Id.* at 2:57-2:59.

3

What proceeds is a minute-long exchange between the officer and McComas, in which McComas says, "you are trying to intimidate me," "this is going all over Youtube," while the officer states "I don't even know who you are." *Id*. at 3:02-4:03. In response to McComas accusing Rodriguez' station of being "corrupt," the officer seemingly more agitated says: "What's wrong with you, man? Are you some kind of Constitutionalist, crazy guy, or something like that?" *Id*. at 3:35-3:47. McComas responds, "No, Sir." *Id*. at 3:45. Rodriguez then asks, "Why are you doing this?" seemingly referring to the fact that McComas was filming. *Id*. at 3:56. McComas responds: "Why are you sitting here with your gun out on me? This is why I am doing this… to protect myself from you." *Id*. at 3:57-4:02. The encounter ends with Rodriguez retreating toward his car while facing McComas and commenting: "Put it on Youtube. I don't really care." *Id*. at 4:09-4:22.

Plaintiff filed this action on May 18, 2016, seeking damages and injunctive relief. Compl. at 7 (ECF No. 1). He alleges that Defendant Rodriguez acted in retaliation for Plaintiff's exercise of his First Amendment right to film the police. *Id*. at 29. Defendant disputes that any of his actions were taken in retaliation. Def.'s Mot. for Summ. J. ("Mot.") at 7-11 (ECF No. 33). He claims that he approached Plaintiff to investigate suspicious activity and that he unholstered his weapon and continued to engage Plaintiff in order to protect himself from any threat Plaintiff might have posed. *Id*. Plaintiff alleges that, as a result of the interaction, he experienced mental anguish, humiliation, disturbed sleep and emotional suffering. Compl. ¶ 31.

The Complaint also alleged a *Monell* claim against the City of Rohnert Park. *Id*. ¶¶ 32-41. In response to Defendants' Motion for Summary Judgment, Plaintiff agreed to dismiss the claim against the City. *See* Mot. at 1-20; Opp'n at 3 (ECF No. 43). This Court therefore DISMISSES WITH PREJUDICE Plaintiff's *Monell* cause of action against the City and proceeds to review only Plaintiff's retaliation claim against the individual officer.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the burden shifts to the opposing party, who must "set out specific facts showing a genuine issue for trial" to defeat the motion. *Anderson*, 477 U.S. at 256.

**DISCUSSION**

**I. A Genuine Dispute Exists As To Whether Defendant's Intent To Inhibit Speech Was A Substantial Or Motivating Factor In His Conduct.**

In order to sustain his Section 1983 claim of retaliation in violation of the First Amendment, Plaintiff must establish three elements: (1) he was engaged in constitutionally

5

protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) intent to inhibit the protected speech was a substantial or motivating factor in the defendant's conduct. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)

As a threshold matter, Plaintiff has established that his conduct—filming a police officer on public property—meets the first requirement of the retaliation analysis. The right to film matters of public concern, including police activity, is firmly established. *See Adkins v. Limtiaco*, 537 F. App'x 721, 722 (9th Cir. 2013) (citing *City of Houston v. Hill,* 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.")). Defendant concedes that Plaintiff meets the first and second elements of the retaliation claim, at least with respect to some of the officer's actions.[1] Opp'n at 10. Defendant argues that Plaintiff has not met his burden of proof with respect to the third element of the claim: that Rodriguez's intent to inhibit McComas' protected conduct was a substantial or motivating factor in the actions that Rodriguez took. Mot. at 6. Stated differently, Defendant disputes that he acted with a retaliatory motive.

In order to create a genuine issue of material fact on retaliatory motive in the First Amendment context, Plaintiff must present "in addition to evidence that the defendant knew of the protected speech, at least evidence of proximity in time between the protected speech and the allegedly retaliatory decision, evidence that the defendant expressed opposition to the speech, or evidence that the defendant's proffered reason for the adverse action was pretextual." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted). Upon a prima facie case of retaliatory harm, the burden shifts to the defendant official to demonstrate that he would have taken the same action even in the absence of the protected conduct. *See Keyser v. Sacramento City Unified Sch.*

---

[1] Defendant admits that if the officer had pulled out his gun to threaten Plaintiff for filming, an ordinary person would be chilled or dissuaded from continuing to film. Mot. at 6. Defendant contends that the initial approach by the officer, however, would not have chilled a person of ordinary firmness. Reply at 5.

6

*Dist.*, 265 F.3d 741, 750 (9th Cir. 2001); *Hartman v. Moore*, 547 U.S. 250, 260 (2006). If there is a finding that retaliation was not the but-for cause of the action complained of, "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Hartman*, 547 U.S. at 260.

Defendant argues that the issue on summary judgment is whether Plaintiff presented evidence that he acted with a retaliatory motive only when he threatened Plaintiff with a firearm. Mot. at 6-9; Reply at 2. Defendant reasonably relies on the language of the Complaint to frame the scope of the alleged violation; the Complaint states that Defendant "violated Plaintiff's rights … by repeatedly threatening Plaintiff with a firearm in retaliation for Plaintiff's exercise of his free speech… and right to record police activity." Compl. ¶ 29. But the Complaint also alleges—and the evidence supports—other actions that Defendant took: the officer "approached Plaintiff," rolled down his window and took a photo of Plaintiff, emerged from the vehicle, continued to advance toward Plaintiff with his weapon drawn, made statements about the fact that Plaintiff was filming, etc. *Id.* ¶¶ 15-26. Even though not explicitly listed under the section entitled "First Cause of Action," these actions also comprise Defendant's conduct toward Plaintiff on July 29th. When Plaintiff states in the complaint that "by his conduct, Defendant acted under color of state law" to deprive Plaintiff of his rights, it is evident that Plaintiff's alleged violation arises out of the totality of Defendant's actions, not just the unholstering of the weapon. *Id.* ¶ 28.

Reviewing the entire record on summary judgment in this case, the Court finds that there is sufficient evidence of retaliatory motive to establish a triable issue of fact. First, Plaintiff has offered evidence that Defendant knew of the protected activity. McComas testified in his deposition that he first took photos of the officer's car as Officer Rodriguez was driving north on Hermitage Way, that McComas then held up his camera pretending to film Rodriguez as he was parked by a basketball hoop a few houses away, and that he was actively filming with his cell phone in plain sight from the moment Rodriguez started driving toward him until the end of the encounter. McComas Dep. at 55:4-56:8; 64:23-

7

65:2. The video itself provides evidence that Rodriguez became aware of McComas' filming when he pulled up in front of McComas' house, hence Rodriguez rolling down his window and taking a photo of McComas. Video at 1:20-1:55. Rodriguez admits in his declaration that at the moment he exited his vehicle, he knew McComas was holding a phone in his right hand. Rodriguez Decl. ¶ 13. Rodriguez' incident report suggests that the officer found out much earlier that McComas was holding a "cellular phone in hand" —as early as when the officer got a first glimpse of McComas allegedly hiding behind a truck. Ex. 2 to Pl.'s Evid. in Opp'n to Summ. J. ("Incident Report") (ECF No. 43-1). In sum, sufficient evidence exists that Rodriguez knew McComas was filming when Rodriguez approached McComas' house and got out of his car to converse with McComas.[2]

Second, Plaintiff has presented circumstantial evidence of Defendant's expressed opposition to the protected conduct. While the officer follows McComas with his gun drawn and pointed toward the ground, McComas asks in agitated tone: "What have I done? Answer me! Why did you get out of your vehicle?" Video at 2:48-2:57. Officer Rodriguez answers: "You are taking a picture of me. I am taking a picture of you." *Id*. at 2:57-2:59. The reason the officer instinctively gave for why he got out of his car was that McComas was "taking a picture" of him; this fact constitutes evidence of retaliatory motive. The second comment Rodriguez made about McComas further supports the notion that Rodriguez was irritated by the filming. The officer inquired: "What's wrong with you, man?! Are you some kind of Constitutionalist, crazy guy, or something like that?" *Id*. at 3:35-3:47. A few seconds later, Rodriguez asked, "Why are you doing *this*?" seemingly referring to the fact that McComas was filming. *Id*. at 3:56. McComas responded that he is "doing *this* to protect himself" from the officer. *Id*. at 3:57-4:02. Even though Rodriguez said at the very end of the video segment, "Put it on Youtube. I don't really care," the

---

[2] How soon after turning on Hermitage Way the officer learned that McComas was taking photos and video of him is a disputed fact. It is undisputed though that the officer knew, at least at the point when he took a photo of McComas, that McComas was filming. Def.'s Ex. B to Rodriguez Decl. (ECF No. 35-2).

8

Court finds it odd that an officer who alleges he was not impacted by the filming found it necessary to mention, and question, the filming on multiple occasions. *Id.* at 4:09-4:22. Even though these three statements do not constitute strong opposition to Plaintiff's filming activity, when viewed in the light most favorable to the nonmoving party and in conjunction with the rest of the evidence, they support an inference of retaliatory motive.

Third, the record contains circumstantial evidence that Defendant's stated reasons for the actions he took were pretextual. Even if it were the case that Defendant approached Plaintiff's house because he found it suspicious that a man was hiding behind a truck in broad daylight, it is not clear why the officer continued the engagement once he saw that the man was simply standing in his driveway holding a cellphone and taking a video.[3] The transcript of the dispatch call provides evidence that Rodriguez had no reason to suspect McComas of a violation; the check on McComas' license plate came back "clear." Ex. 5 to Pl.'s Evid. in Opp'n to Summ. J. at 2 (ECF No. 43-1). The photo that Rodriguez took shows clearly that McComas was simply standing in his driveway pointing a cellphone at the officer. Ex. B to Rodriguez Decl. (ECF No. 35-2). It is not at all evident that if McComas was not filming, Rodriguez would have still found a reason to get out of his vehicle. Similarly, once McComas emptied his pocket and kept both of his hands in plain sight, why did Rodriguez continue to follow McComas with his gun drawn, albeit pointed toward the ground? Rodriguez claimed in his declaration he followed McComas because the subject was "retreating to an area [Rodriguez] could not see and where he could potentially access a weapon" to use against Rodriguez. Rodriguez Decl. at ¶ 17. But just as a few seconds prior, Rodriguez had informed McComas that he could go into his house if he wanted. Video at 2:39-2:47. A jury could find that a reasonable officer actually

---

[3] Further, a reasonable officer who actually thought a person was engaged in suspicious activity at a time when "most burglaries occur" would have investigated that activity sooner. Rodriguez Decl. ¶ 8. Rodriguez spent two minutes checking the license plate on the Toyota truck before approaching McComas' house in order to investigate. McComas Dep. at 64:23-65:2.

9

concerned for his safety would not tell a potentially dangerous subject he could go into a house where he could retrieve a weapon.

Lastly, the discrepancies between the officer's report following the incident and his declaration in the course of litigation cast doubt on the officer's credibility.[4] Contrary to Defendant's contention, the discrepancies are relevant because they make the fact that he acted with a retaliatory motive, and the subsequent need to conceal that motive, more likely. Reply at 4; *See O'Brien v. Welty*, 818 F.3d 920, 935 (9th Cir. 2016) (holding that events *after* the alleged violation have relevance "for they may plausibly be understood to show a continuation of animosity" toward the plaintiff and his point of view).

Defendant argues that he has, nonetheless, met his burden of showing that he would have taken the same actions on July 29th even without the impetus to retaliate. The Court is not persuaded. The main evidence offered to show that Rodriguez had non-retaliatory reasons for his actions lies in Rodriguez' declaration. But as discussed above, some of Rodriguez' statements in his declaration are contradicted by his own incident report. The incident report suggests that Rodriguez was aware McComas was holding "a cellular phone in his hand" at the moment that Rodriguez allegedly saw McComas in his rear view mirror. Incident Report at 1. By contrast, in his declaration Rodriguez claims that it was not until much later, after Rodriguez took a photo of McComas and got out of the car, that he learned McComas was holding a phone. Rodriguez Decl. ¶¶ 9-13. Considering the inconsistencies in Rodriguez' own account of events, the Court cannot, and should not at this stage in the proceedings, rule out the possibility that Defendant was motivated by desire to inhibit Plaintiff's filming. Even though Rodriguez could have approached McComas to conduct an investigatory stop, there is not enough evidence here to show that Rodriguez would have stopped in front of McComas' house, taken a picture of McComas,

---

[4] In addition to the inconsistent reporting on when Rodriguez realized McComas was holding a phone, the incident report contradicts the course of events as shown on the video. At no point does the officer ask McComas: "what was going on and if he needed help" or "if he wanted to hurt himself or others." Incident Report at 1. Similarly, at no point does McComas walk into his garage. *Id*.

10

and exited his vehicle if McComas had not been filming. Similarly, there is not enough evidence to show that Rodriguez would have followed McComas for two minutes with a gun drawn and made the remarks he did had McComas not insisted on filming the encounter.

For the foregoing reasons, the Court finds that Plaintiff has produced evidence that retaliation was the but-for cause of Defendant's conduct and the resulting harm. Whether intent to inhibit protected activity was a substantial or motivating factor in Defendant's conduct is a disputed question of fact that falls within the province of the jury.

## II. Defendant Is Not Entitled to Qualified Immunity.

Having determined that questions of material fact remain, the Court must now decide whether summary judgment should nevertheless be granted because Officer Rodriguez is entitled to qualified immunity.

The doctrine of qualified immunity shields government officials from civil damages liability when performing discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). Government officials who "reasonably but mistakenly" conclude that their actions are lawful will be shielded from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established at the time of the officer's conduct. *Pearson*, 555 U.S. at 232; *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010).

As stated above, the Court finds that, based on the factual record produced, a rational jury could conclude that Defendant has violated Plaintiff's constitutional right to

film the police. The question then becomes whether the right violated was clearly established so that a reasonable officer would know that his conduct was unlawful under the circumstances. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendant argues that there is no clearly established right for a person to refuse an officer's safety command because that person happens to be engaged in a First Amendment activity. Mot. at 12. This formulation of the right in question is incorrect. While it is true that the right violated must be established at the appropriate level of specificity, the specificity required is framed by Plaintiff's version of the facts, not Defendant's. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) (explaining that "defendants are only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [the plaintiff], they violated no clearly established constitutional right"). Resolving all factual disputes in Plaintiff's favor, the Court must determine whether a reasonable officer in Defendant's position would believe that the actions alleged—engaging, questioning and threatening a citizen for filming the police—were lawful in light of clearly established law. In the First Amendment retaliation context, the answer must be no.

The constitutional right to be free from retaliation was clearly established at the time of Defendant's conduct. Retaliation for engaging in protected speech has long been prohibited by the First Amendment. *See, e.g. Pinard*, 467 F.3d at 770. The right to film police activity is well recognized in California. *See Fordyce v. City of Seattle*, 55 F.3d 436, 438-39 (9th Cir. 1995); Cal. Pen. Code §§ 69(b), 148(g). A reasonable officer in Rodriguez' position would have known that it is a violation of a constitutional right to harass an individual who is peacefully filming the officer. Further, the law is clearly established that there is a right to be free from retaliation even if a non-retaliatory justification exists for the officer's actions. *See e.g., Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006) (holding that a right exists to be free of police action for which retaliation is a but-for cause even if probable cause exists for that action); *see also O'Brien*, 818 F.3d at 936. Thus, a reasonable officer would have known that he cannot commit an

act for a retaliatory reason, even if that same act could be justified by a non-retaliatory reason, such as the officer's safety.

In sum, where, as here, reasonable jurors could believe that Defendant violated Plaintiff's constitutional right, and the right was clearly established at the time of the encounter, the case should proceed to trial. Defendant is not immune from suit.

**CONCLUSION**

Plaintiff has set forth sufficient facts to raise a genuine issue as to whether Defendant acted with intent to inhibit or chill the protected filming activity. This issue is to be decided by the trier of fact at trial, not by this Court on summary judgment. Further holding that Defendant is not entitled to qualified immunity, the Court hereby DENIES Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: 04/03/17  _____

THELTON E. HENDERSON
United States District Judge